IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-01725-RBJ

AUTO-OWNERS INSURANCE CO.,

    Plaintiff,

v.

BOLT FACTORY LOFTS OWNERS ASSOCIATION, INC., a Colorado nonprofit corporation, and SIERRA GLASS CO., INC.,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on plaintiff and counterclaim defendant Auto-Owners Insurance Co.'s ("AOIC") motion to dismiss. ECF No. 23. For the reasons stated below, the motion is GRANTED.

### I. BACKGROUND

This insurance dispute stems from a civil lawsuit filed in the Denver District Court (the "underlying lawsuit"). Complaint, ECF No. 1 at ¶8. In the underlying lawsuit, defendant Bolt Factory Lofts Owners Association, Inc. ("Association") asserted construction defect claims against six contractors for alleged defects at one of its Denver condominium developments. *Id.* at ¶12. Two of those six contractors then asserted third-party claims against subcontractors, including defendant Sierra Glass Co., Inc. ("Sierra Glass"). *Id.* at ¶13. Following a series of settlements, the only claims that proceeded to trial were the claims that the Association, as assignee of the two contractors, asserted against Sierra Glass. *Id.* at ¶17.

AOIC issued seven insurance policies (the "Policy") to Sierra Glass, and as part of the Policy, defended Sierra Glass in the underlying lawsuit under a reservation of rights. *Id.* at ¶¶17, 22. On or about May 4, 2018 the Association presented a settlement demand to Sierra Glass for $1.9 million. *Id.* at ¶39. Sierra Glass asked AOIC to settle the case for that amount, but AOIC declined. *Id.* at ¶42. This prompted Sierra Glass, in an effort to protect its own financial interests, to strike a deal with the Association. As part of the written "Agreement," Sierra Glass agreed to refrain from offering a defense at trial in exchange for the Association's express promise that it would not pursue any recovery against Sierra Glass. *Id.* at ¶25; *see also* the Agreement, ECF No. 1-4. Moreover, Sierra Glass agreed to assign any bad faith claims it may have against AOIC to the Association. ECF No. 1 at ¶26. Because of the Agreement, the trial court reduced the 15-day jury trial to a two-day bench trial set to commence on May 9, 2018. *Id.* at ¶24.

Sierra Glass signed the Agreement without AOIC's knowledge or consent. *Id.* at ¶¶33–34. In fact, the first time AOIC learned of the Agreement was at the pretrial conference held on May 4, the Friday before the 15-day trial was originally set to begin. *Id.* at ¶24. According to AOIC, the Policy afforded AOIC the right to defend Sierra Glass, and it required Sierra Glass to cooperate in the defense of the legal action. *Id.* at ¶¶30–31. And, AOIC alleges that it had been providing a full defense under a reservation of rights with the intent to defend until final judgment. *Id.* at ¶¶37–38.

On May 9, 2018, the first day of the bench trial, AOIC petitioned to intervene in the lawsuit and to continue the trial in the hopes of protecting its rights under the Policy. *Id.* at ¶¶49–50. The district judge held a hearing on the motion that same day, but ultimately held that

the Agreement was valid under *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010).[1] *Id.* at ¶¶51, 57. Therefore, the two-day trial commenced without Sierra Glass mounting a defense. *Id.* at ¶¶59–62. Unsurprisingly, on May 30, 2018 the trial court ruled in favor of the Association, and entered final judgment in the amount of $2,489,021.91 (the "Judgment"). *Id.* at ¶65; *see* Trial Court Order, ECF No. 1-9. Then, on June 18, 2018 the Association obtained a writ of garnishment against AOIC in the Denver District Court. ECF No. 1 at ¶66; *see* Writ of Garnishment Order, ECF No. 1-10. AOIC removed that action to this Court on July 9, 2018. *See* Case Number 18-cv-1738, ECF No. 1.

On July 6, 2018 AOIC filed this declaratory judgment action against the Association and Sierra Glass. AOIC seeks a declaration from this Court that it does not owe any obligations or payments to defendants under the Policy, ECF No. 1 at ¶98, a declaration that Sierra Glass breached the Policy by failing to cooperate with AOIC, *id.* at ¶99, and a declaration that the state court Judgment obtained by the Association in the Underlying Lawsuit is not enforceable against AOIC, *id.* at 17.

Shortly after filing this action, on July 27, 2018, AOIC timely appealed the trial court's Judgment. AOIC asked the Colorado Court of Appeals to reverse the trial court's denial of its motion to intervene and asked the appellate court to vacate the Judgment. *See* AOIC's Opening Brief, ECF No. 28-1. Meanwhile, the Association and Sierra Glass, in concert, answered the complaint in the present case and asserted counterclaims for breach of contract and third-party statutory and common law bad faith claims. *See* Answer and Counterclaims, ECF No. 20.

---

[1] *Nunn* established that an insured can suffer actual damages for a bad faith claim even when the insured entered into a stipulated excess judgment. *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 122–23 (Colo. 2010).

AOIC moves to dismiss the counterclaims under Fed. R. Civ. P. 12(b)(1) for want of subject matter jurisdiction, arguing that the counterclaims are not ripe for review. ECF No. 23. Sierra Glass and the Association responded in opposition, ECF No. 28, and AOIC replied, ECF No. 32. The motion is ripe for review.

## II. STANDARD OF REVIEW

"The question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995). Thus, a ripeness challenge is properly analyzed under Fed. R. Civ. P. 12(b)(1), which empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). As such, defendants bear the burden to establish jurisdiction over the counterclaims they asserted against AOIC.

"[R]ipeness is peculiarly a question of timing," *Gonzales*, 64 F.3d at 1499 (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140 (1975)), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *id.* (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). A court assessing the ripeness of a claim must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000) (quoting *Abbott Labs.*, 387 U.S. at 149). The ripeness doctrine is an important prudential limitation which prevents courts from deciding untimely disputes until the controversy is certain and not contingent on future events. *See Gonzales*, 64 F.3d at 1499. "In short, ripeness doctrine addresses a timing question: when in

time is it appropriate for a court to take up the asserted claim." *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (citation, quotation, and alternations omitted). Lastly, the ripeness rules apply with equal force to counterclaims. *See Entek GRB, LLC v. Stull Ranches, LLC*, No. 11-CV-01557-PAB-KLM, 2012 WL 4478808, at *2 (D. Colo. Sept. 28, 2012).

### III. ANALYSIS

Defendants assert three counterclaims against AOIC: (1) breach of contract; (2) statutory unreasonable denial of payment of a benefit; and (3) common law bad faith. ECF No. 20 at ¶¶34–53. Defendants' breach of contract claim complains that AOIC "has refused to indemnify Sierra Glass for the Judgment," that AOIC's "refusal to indemnify Sierra Glass for the judgment is a breach of the contracts," and that AOIC's "breach of the [AOIC] Policies has caused Sierra Glass damages in the amount of the unjustified Judgment, namely $2,489,021.91, plus interest and costs." *Id.* at ¶¶36, 37, 39. Defendants' statutory denial claim asserts that "[t]he benefits owed by [AOIC] to Sierra Glass under the [AOIC] Policies include the payment of the unsatisfied Judgment entered against Sierra Glass in the Underlying Action," and that AOIC's failure to pay violates the statute. *Id.* at ¶¶41–44. Finally, defendants' bad faith claim principally alleges that AOIC "owes to Sierra Glass the duty to indemnify it for the unsatisfied Judgment entered against Sierra Glass in the Underlying Action," a duty that it has failed to perform, and that AOIC "failed in its duty to meaningfully participate in settlement negotiations in an effort to allow Sierra Glass to avoid a significant exposure to a judgment in excess of the limits of the AO[IC] Policies." *Id.* at ¶¶46–48.

AOIC argues that defendants' counterclaims are contingent on the outcome of the appeal in the Underlying Lawsuit, and thus, the counterclaims must be dismissed because they are not ripe. ECF No. 23 at 5. AOIC relies heavily on the decision in *Kuzava v. United Fire & Casualty*

*Co.*, No. 17-CV-02673-CMA-NYW, 2018 WL 3633558 (D. Colo. July 31, 2018). In *Kuzava*, the plaintiffs were injured in a car collision with Eric Kubby, who, at the time of the accident, was driving a truck owned by Lyon Trucking, Inc. *Id.* at *1. Defendant United Fire insured both Mr. Kubby and Lyon Trucking (the "Insureds"). *Id.* After plaintiffs sued the Insureds in state court, United Fire, per its insurance policy, represented the Insureds. Shortly before the trial, the Insureds entered into a *Nunn*-type agreement (the "*Nunn*-Agreement") where the Insureds agreed to assign the plaintiffs the rights and interests in any claims under the Policy against United Fire in exchange for the assurance from the plaintiffs that they would not execute or enforce any judgment against the Insureds. *Id.* Also, as part of the *Nunn*-Agreement, the parties agreed to arbitrate the claims. *Id.*

United Fire moved to intervene in the underlying action, sought to enjoin the pending arbitration, and asked the district court to declare the *Nunn*-Agreement invalid and void as contrary to public policy. *Id.* Prior to the trial judge's ruling on United Fire's motion, the case proceeded to arbitration, where the plaintiffs received a $3 million award. *Id.* The trial court subsequently entered judgment in that amount, and three days later, denied United Fire's motion as moot. *Id.* United Fire appealed to the Colorado Court of Appeals, seeking a reversal of the judgment and arguing that the trial court erred by denying its motion to intervene. *Id.* at *2.

The plaintiffs, as assignees of the Insureds, then filed a lawsuit in state court where they asserted breach of contract and bad faith claims against United Fire. *Id.* United Fire removed the action to federal court, and shortly thereafter, filed a Rule 12(b)(1) motion to dismiss. *Id.* United Fire argued that the claims were not ripe for review because United Fire's appeal remained pending. *Id.*

Adopting the magistrate judge's recommendation, the court agreed with United Fire that the claims were unripe. *Id.* at *6. The court ruled that the bad faith claim was unripe because "the excess judgment and the outcome of the Underlying Action [were] not yet final as a result of Defendant's pending appeal." *Id.* at *5. For the same reasons, the court also determined that the breach of contract claim for failure to indemnify was unripe because the appellate court could reverse the underlying judgment thus voiding the harm alleged. *Id.* at *6. In short, the court determined that the plaintiffs' claims were premature and speculative because of United Fire's pending appeal. *Id.* at *5.

In reaching this decision, the court relied on *Vanderloop v. Progressive Cas. Ins. Co.*, 769 F. Supp. 1172, 1173 (D. Colo. 1991). In *Vanderloop*, the insured filed a negligence and bad faith action against his insurance company for failing to settle a negligence action asserted against him, thereby exposing him to an excess liability judgment. *Id.* at 1173. The insurance company moved for summary judgment, arguing that the insured's claims were barred by the statute of limitations. *Id.* The "key question" that the court addressed on summary judgment was when did the bad faith claim ripen into a viable cause of action. *Id.* at 1174. The insurer argued that the claim accrued on the day the trial court entered judgment, whereas the insured argued that the bad faith claim accrued the day the Colorado Court of Appeals rendered final judgment on appeal. *Id.* The court agreed with the insured, finding that the limitations period begins to run only after the judgment on appeal becomes final. *Id.* at 1175. The court ruled,

> When, as here, the economic injury alleged is the actual imposition of an excess liability judgment on the insured, the harm or damages element of the bad faith tort claim necessarily remains uncertain and speculative until final judgment on appeal either establishes that exposure or dissolves any liability. The tort simply is not complete until the plaintiff's injury is established.

*Id.*

7

Here, in response to AOIC's argument, defendants argue that the "cases upon which [AOIC's] motion relies do not support the relief requested." ECF No. 28 at 9. Curiously, however, they make no mention of the *Kuzava* decision in this section.[2] The closest defendants come to attacking the *Kuzava* decision is by attacking the rationale used in *Vanderloop*, a case the *Kuzava* court relied on in its ruling. Defendants state that "*Vanderloop* predated *Nunn* by decades and a judgment under a *Nunn* agreement allows the insurer—which is a third-party to the underlying tort suit—to protect its interests in later proceedings." ECF No. 28 at 10. I agree with the plain language of this statement. But if defendants' statement that "*Vanderloop* predated *Nunn* by decades" is their attempt to argue that *Nunn* overruled *Vanderloop*, I disagree. As the *Kuzava* court noted, the *Nunn* holding is "unrelated to ripeness, [and thus,] it does not supersede *Vanderloop*." *Kuzava*, 2018 WL 3633558 at *4. Moreover, I find that *Vanderloop* remains valid and represents the majority rule. *Id.*; *see also Connelly v. State Farm Mut. Auto. Ins.*, 135 A.3d 1271, 1276 n.17 (Del. 2016) (compiling cases for the majority position that a "bad-faith failure-to-settle claim accrues when the excess judgment becomes final and non-appealable").

Defendants also argue, without citation, that "a claim is ripe when once there is an injury; the judgment here established the injury." ECF No. 28 at 9. But beyond this unsupported position, defendants sidestep the issue of ripeness almost entirely. Instead, their arguments focus on issues that are largely unrelated and irrelevant to the issue of ripeness, including (1) that the

---

[2] Defendants do distinguish the underlying facts of *Kuzava* in the section where they argue that AOIC will not prevail in its appeal. *See id.* at 13. But in this lone instance, they cite to the Colorado Court of Appeals' decision regarding United Fire's right to intervene. They do not cite Judge Arguello's decision on the issue of ripeness. Because the appellate decision did not address ripeness, it is irrelevant to the Rule 12(b)(1) motion. *See* Appellate Decision, ECF No. 23-4.

8

garnishment action should not be stayed,[3] *id.* at 8; (2) that AOIC implied that the Judgment was final by filing a notice of appeal with the Colorado Court of Appeals, and thus, it is precluded from taking the opposite position in this Court; *id.*; (3) that the Agreement was valid, *id.* at 11; and (4) that AOIC will not prevail on its appeal, *id.* at 12.

Defendants' focus is misplaced. First, the related but independent garnishment action has no bearing on the issue of ripeness of the counterclaims. The same is true of defendants' third and fourth arguments. Whether the Agreement is valid, and whether AOIC is likely to succeed on appeal, is not at issue in this motion. Second, I disagree with defendants that AOIC is precluded from arguing that defendants' bad faith failure to settle and related claims are now unripe after appealing the trial court's Judgment. A final judgment for the purposes of appeal is "one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." *State ex rel. Suthers v. CB Servs. Corp.*, 252 P.3d 7, 10 (Colo. App. 2010) (quoting *People v. Guatney*, 214 P.3d 1049, 1051 (Colo. 2009)). Here, it is true that the court pronouncing the Judgment—the state trial court—has nothing further to do in the Underlying Lawsuit. The Judgment is therefore final for purposes of appeal. But this is different from the ripeness issue presented in this motion. The ripeness doctrine asks whether a controversy is certain and not contingent on future events. Here, as I explain more thoroughly below, the grounds for defendants' counterclaims is the imposition of an excess judgment. Because the Judgment remains uncertain until the appellate court rules on the appeal, any claims that rely on that Judgment —including the three counterclaims—are premature.

---

[3] AOIC moved to stay the garnishment action pending the outcome of this declaratory judgment action. *See* Case Number 18-cv-1738, ECF No. 19. But after defendants submitted their response brief to the motion to dismiss at hand, I denied AOIC's motion to stay the garnishment action without prejudice on procedural grounds. *Id.*, ECF No. 33. AOIC has not renewed its motion to stay.

9

Having considered the relevant caselaw and AOIC's motion, which is relatively unopposed on the issue of ripeness, I find that defendants' counterclaims are unripe. The injury that forms all three counterclaims derives from the Judgment that is currently on appeal. Thus, if overturned on appeal, the grounds for defendants' counterclaims are no longer present. It follows that defendants have yet to suffer a concrete and non-appealable injury, which is the final imposition of an excess judgment.[4] Because the injury will remain speculative until the final decision of Colorado's appellate courts is issued, these counterclaims are unripe. Accordingly, defendants have not met their burden of establishing jurisdiction, and AOIC's motion to dismiss defendants' counterclaims without prejudice is granted.

But that's not all. "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Here, the counterclaims are not the only claims that rely on the trial court's Judgment in the Underlying Lawsuit. AOIC's declaratory action also relies, in large part, on that Judgment. Specifically, AOIC asks this Court to declare that it does not owe any coverage obligations or payments to defendants under the Policy because Sierra Glass allegedly breached its duty to cooperate. ECF

---

[4] It isn't entirely clear that $2,489,021.91 represents an excess liability judgment. The policy provides $2 million for general aggregate, $1 million for each occurrence, and $2 million for products-completed operations aggregate. Policy, ECF No. 1-2 at 11. Defendants suggest in their response brief that $2.4 million is in excess of the policy limits, but they do not brief the issue. *See* ECF No. 28 at 12–13 (summarizing AOIC's position that the appellate court might vacate the Judgment in the Underlying Lawsuit, "so the excessive judgment and failure to settle will no longer be the basis for any claimed injury by Sierra Glass." (emphasis in original)). Because it is not briefed, and because of defendants' emphasized statement, I assume for the purposes of this motion that the Judgment is an excess liability judgment.

No. at ¶¶98–99. It also seeks a declaration that "the judgment obtained by the Association in the Underlying Lawsuit is not enforceable as against AOI[C]." *Id.* at 17. As such, if AOIC prevails on appeal by successfully vacating the Judgment, part of the declaratory relief it requests will no longer be necessary. Accordingly, I find that the rationale supporting my ruling on the ripeness of defendants' counterclaims applies with equal force to AOIC's declaratory judgment action, and that claim must be dismissed for want of jurisdiction.

Finally, I note that AOIC's dual attack on the Judgment is inconsistent. In its appeal, it asks the Colorado Court of Appeals to vacate the Judgment and reverse the trial court's decision denying its motion to intervene so that it may defend itself and Sierra Glass in the Underlying Lawsuit. Here, however, AOIC seeks a declaration that it does not owe any obligations to defendants under the Policy. Thus, if I rule in AOIC's favor on that request, and the appellate court subsequently reverses the trial court's denial, that would create a procedural conflict. Because of these inconsistent positions, and because of the premature nature of AOIC's requested declaratory relief, I find that AOIC's complaint for declaratory judgment is also premature. As such, I dismiss this claim without prejudice.

**ORDER**

Defendants Bolt Factory Lofts Owners Association, Inc. and Sierra Glass Co., Inc.'s counterclaims are dismissed without prejudice. Furthermore, Auto-Owners Insurance Co.'s claim for declaratory relief is also dismissed without prejudice.

DATED this 30th day of May, 2019.

BY THE COURT:

*[signature: Brooke Jackson]*

11

_____
R. Brooke Jackson
United States District Judge