IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-01725-RBJ

AUTO-OWNERS INSURANCE CO.,

      Plaintiff,

v.

BOLT FACTORY LOFTS OWNERS ASSOCIATION, INC., a Colorado nonprofit corporation,
and SIERRA GLASS CO., INC.,

      Defendants.

---

ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on plaintiff Auto-Owners Insurance Co.'s ("AOI") partial

motion for summary judgment (ECF No. 102).  For the reasons discussed below, the motion is

DENIED.

## I.    BACKGROUND

This case is the offshoot of an underlying case in which Bolt Factory Lofts Owners

Association (the Association) complained about construction defects at the Bolt Factory Lofts.

ECF No. 102.  The Association sued six contractors including the general contractor ("GC").  *Id.*

The GC, in turn, asserted third-party claims for negligence and breach of contract against sub-

contractor Sierra Glass ("Sierra").  *Id.*

The damage allocable to Sierra included leaking and water damage surrounding the

windows and doors Sierra installed.  *Id.*  The damage began in 2010, and, in the underlying suit,

the Association alleged that the damage continued for several years.  *Id.*  Sierra was insured by

AOI for six of the years in which these damages occurred and by insurance company AMCO for

1

the balance of the years in which damages occurred—AOI issued seven policies to Sierra, six of

which were potentially implicated by the underlying suit.  *Id.*  Each policy had a coverage limit

of $1 million for the type of damage alleged by the Association.  *Id.*  AOI contends that pursuant

to the continuous trigger doctrine, the coverage limit for the underlying suit was $6 million.  *Id.*

On November 7, 2017, shortly after the underlying suit was filed, AOI sent Sierra a

Reservation of Rights (ROR) letter.  ECF No. 117.  The ROR letter did not contain AOI's

position on the policy limit that would apply in the underlying suit, nor did AOI ever inform

Sierra what its position on the policy limits was.  *Id.*  According to defendants, the only other

communication received from AOI was a phone message telling Sierra that it had retained

counsel to defend the underlying case.  *Id.*

AOI received an analysis of claims from defense counsel.  ECF No. 102.  That counsel,

Mr. Labe, said that a jury could award between $50,000 and $1 million against Sierra in this

case, and that a settlement range between $50,000 and $300,000 was appropriate based on his

analysis.  *Id.*  The GC made demands of $1,723,970, $1,506,478, and $950,000 to Sierra in

March and April of 2018.  *Id.*  None was accepted.  *Id.*  Sierra (through its insurers) made offers

to the GC of $50,000 and $350,000.  *Id.*  Neither was accepted by the GC.

At some point, Sierra brought in independent counsel (Mr. Polk), rather than relying

exclusively on the counsel of Mr. Labe.  On April 19, 2018 Sierra offered the Association

$350,000, entirely funded by AMCO, to settle the water damage claims against Sierra for the

years of damage where AMCO was Sierra's insurer.  ECF No. 117.  Because of the settlement

that followed, AMCO was not responsible for any judgment rendered against Sierra in the

underlying suit.  *See* ECF No. 102.

On April 20, 2018 Sierra entered a pre-trial protective settlement agreement with the Association, under which it assigned the proceeds of any bad faith claim brought by Sierra against AOI to the Association.  ECF No. 117.  The initial protective agreement was oral, and it was only reduced to writing after the trial in the underlying case had concluded.  *Id.*  In the agreement, the Association agreed not to execute its judgment in the underlying case against Sierra and to only execute the judgment against AOI.  *Id.*

At the pretrial conference in the underlying case, the trial judge, Judge Egelhoff, was informed that Sierra would not be presenting a defense, either on liability or damages, and the three-week jury trial was changed to a two-day bench trial.  *Id.*  It was only at this point that AOI discovered the agreement.  *Id.*  AOI then sought to intervene to protect its rights in the underlying suit.  *Id.*  The trial court denied the motion. *Id.*[1]

Ultimately, after the two-day bench trial, Judge Egelhoff awarded $2.4 million in damages to the Association, against Sierra.  *Id.*  The Association moved forward with garnishment proceedings against AOI.  *Id.*  AOI filed this suit for a declaratory judgment on July 6, 2018.  ECF No. 1.  It requested a declaration that AOI had no further obligations to defend or indemnify Sierra, that Sierra breached its duty to cooperate under the policy, that the pretrial agreement between Sierra and the Association is not enforceable against AOI, and that the judgment obtained in the underlying suit is not enforceable against AOI.

---

[1] The trial court's decision was affirmed, *Bolt Factory Lofts Owners Association Inc. v. Auto-Owners Insurance Company,* 487 P.3d 1105 (Colo. App. 2019).  That decision in turn was affirmed by the Colorado Supreme Court, *Auto-Owners Insurance Company v. Bolt Factory Lofts Owners Association Inc.,* 487 P.3d 276 (Colo. 2021).

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a). A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is material if it is essential to the proper disposition of the claim.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The party moving for summary judgment bears the burden of showing a lack of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When determining a motion for summary judgment, the Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party.  *Adler*, 144 F.3d at 670.

## III.    ANALYSIS

The main issue raised by AOI's "Partial Motion for Summary Judgment" is whether AOI breached its duty of good faith and fair dealing to Sierra, its insured, by failing to accept settlement offers within coverage limits.  AOI claims that it was defending Sierra in good faith when Sierra breached the policy by entering a *Nunn* agreement with the Association and refusing to participate in defense at trial.[2]  *See* ECF No. 102.  Defendants claim that AOI breached the policy prior to Sierra's entrance into the *Nunn* agreement—they argue that AOI appeared to act unreasonably in breach of its duty of good faith and fair dealing to Sierra.  These arguments give

---

[2] A *Nunn* agreement is a pretrial agreement entered into by an insured and a plaintiff harmed by the insured.  *Nunn v. Mid-Century Insurance Co.*, 244 P.3d 116, 119 (Colo. 2010).  When the insured believes that its insurer has breached its duty of good faith and fair dealing in its defense of the insured in the suit against the plaintiff, the insured will assign its claim for bad faith against the insurer to the plaintiff, and in return, the plaintiff will agree not to execute the judgment in the underlying suit against the insured.  *Id.*  The plaintiff will then pursue the insurer directly for the judgment in the underlying suit.  *Id.*

rise to a dispute of fact: whether AOI's refusal of limits offers in light of its lack of communication on policy limits appeared unreasonable.

"Before an insured is justified in stipulating to a judgment and assigning its claims against its insurer to a third-party claimant, it must first appear that the insurer has unreasonably refused to defend the insured or to settle the claim within policy limits." *State Farm Mut. Auto. Ins. Co. v. Goddard*, 484 P.3d 765, 769 (Colo. App. 2021). The Colorado Supreme Court, in *Nunn v. Mid-Century Insurance Co.*, held that "when it appears that the insurer—who has exclusive control over the defense and settlement of claims pursuant to the insurance contract— has acted unreasonably by refusing to defend its insured or refusing a settlement offer that would avoid any possibility of excess liability for its insured, the insured may take steps to protect itself from potential exposure to such liability." 244 P.3d 116, 119 (Colo. 2010). "Based on the language in *Nunn,* an insured is justified in entering into a stipulated judgment and assignment agreement without breaching the insurance contract when it *appears* that the insurer has acted unreasonably." *Goddard*, 484 P.3d at 773 (emphasis in original).

Whether an insurer has acted unreasonably or has appeared to act unreasonably is a question of fact. *Id.* at 769. An insurer's reasonableness or appearance of reasonableness is determined objectively under the circumstances. *See Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) (citing *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (1981)).

A. **AOI's Failure to Communicate the Policy Limits to Sierra and Refusal to Accept Limits Offers**

There is a genuine dispute of material fact over whether AOI failed to communicate to Sierra what the policy limits would be for the Association's claims against Sierra and whether that failure made AOI's subsequent rejections of settlement offers within policy limits appear unreasonable.

AOI claims that the policy limit for the underlying case was $6 million, because the damage was caused by "numerous, indivisible small events and that the resultant property damage was gradual and continuous from the time of the first exposure through manifestation of the damage and the filing of the [u]nderlying [l]awsuit."  ECF No. 102 at 2.  AOI describes that type of damage as a "classic 'continuous trigger' case," that implicated at least six of Sierra's policies over the course of six years.[3]  *Id.*  Because each policy had a limit of $1 million, Sierra had $6 million in coverage for the damages to the Association.  *Id.* at 2–3.

AOI supports this claim with an affidavit from Claims Manager Ryan Larson, who attested that AOI "opened six claim files and *maintained the position* that there was at least $6 million in policy limits available to Sierra Glass."  ECF No. 102-2 at 2 (emphasis added).  However, Mr. Larson did not specify to whom AOI maintained the position that the policy limit was $6 million or whether this limit was ever communicated to Sierra.  AOI also relies on the fact that Sierra, per Mr. Polk's statements at deposition, believed that the coverage limits should have been $6 million.  ECF 102-8 at 43.

Defendants, to the contrary, contend that Sierra did not *know* that the policy limit was $6 million, relying on testimony from Mr. Polk's deposition.  They allege that AOI's ROR letter (ECF No. 102-9) "cited policy language that arguably could restrict coverage to the liability limits of a single AOI policy," and that it "did not mention or admit to any available policy limits."  ECF No. 117.  Mr. Polk testified that Sierra believed, in light of the position taken by

---

[3] The continuous trigger theory is "a legal fiction permitting the law to posit that many repeated small events occurring over a period of decades are actually only one ongoing occurrence."  *Pub. Serv. Co. of Colorado v. Wallis & Companies*, 986 P.2d 924, 939 (Colo. 1999).  It is used where "property damage is continuous and gradual and results from many events happening over a long period of time" and is used for the purpose of "determining what policies have been triggered."  *Id.*

AOI in the ROR letter, the coverage could have been as low as $1 million or as high as $6 million.  ECF No. 102-8 at 44.  Mr. Polk stated that the only direct communication Sierra received from AOI, despite many attempts by Sierra to discuss the underlying case, was a phone message telling Sierra that AOI had retained coverage counsel.  ECF 117-3 at 48.

This is a genuine dispute; there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler*, 144 F.3d at 670.  A rational factfinder could find, based on the testimony from Mr. Polk's deposition, that Sierra did not know their policy limit in the case against the Association was $6 million, and that they reasonably believed their coverage could be as low as $1 million.  A reasonable fact finder could also find, based on Mr. Larson's affidavit and some statements made by Mr. Polk at his deposition, that Sierra did know that AOI's position was that there was $6 million in coverage for this incident.

This fact is also material; it is "essential to the proper disposition of the claim."  *Id.*  For AOI to succeed in this declaratory judgment action, it must show that Sierra breached the policy agreement by failing to cooperate in the defense in the underlying suit.  AOI alleges that Sierra failed to cooperate by entering the protective agreement with the Association in the days before trial.  ECF No. 102.

However, *Nunn* expressly states that an insured is justified in entering a protective agreement if the insurer *appears* to act unreasonably in defending the insured or refusing a settlement offer that would avoid any *possibility* of excess liability.  244 P.3d at 119.

Whether AOI's actions objectively appeared reasonable to Sierra, i.e., whether Sierra knew or should have known that AOI was considering this a continuous trigger case and knew or should have known that the policy limit in the underlying case was $6 million, is a question for the jury.  So too is the question of whether, if Sierra really believed that the policy limit could be

as low as $1 million, it appeared that AOI was unreasonably exposing Sierra to an excess

judgment by refusing settlement offers within the policy limits.

Reading the pleadings in the light most favorable to defendants, there is a genuine dispute

of material fact.  Therefore, summary disposition is not appropriate.

## ORDER

AOI's motion for partial summary judgment, ECF No. 102, is DENIED

DATED this 3rd day of September 3, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

8